UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| YANA EDQUIST | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 14-14133-LTS |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER ON PENDING MOTIONS

July 10, 2015

SOROKIN, J.

A number of motions, filed by both parties, are pending before the Court. To begin, both Plaintiff Yana Edquist and Defendant Jackson National Life Insurance Company ("Jackson") have filed motions for summary judgment. For each of these motions, the Court considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Certain facts, however, are not disputed by the parties. Those facts are as follows:

1. 87 Florence Street in Melrose, Massachusetts is a two-family home. Doc. No. 50-1 at 7-8.[1] Edquist has owned the home at all relevant times. Id. at 7. In June, 2013, she

---

[1] This document consists of portions of Plaintiff's deposition transcript. Each page, as dominated on the Court's electronic case filing system, contains four pages of deposition transcript. Page references to this document refer to the pagination of the deposition transcript and not the pagination on the electronic case filing header.

lived in the second floor unit known as 87 Florence Street, Apartment 2, Melrose, Massachusetts.  Id. at 7-8.

2. Edquist received mail at 87 Florence Street, Melrose, MA 02176 at all relevant times. Id. at 43, 47; Doc. Nos. 50-5, 50-6.

3. On or about June 21, 2013, Edquist met with Brian Dudley, an employee of Sovereign Bank and an agent of Jackson, and arranged to purchase an annuity from Jackson using funds from her retirement accounts.  Doc. No. 50-1 at 21-22, 116; Doc. No. 50-5 at 2.

4. On June 24, 2013, Jackson received a transfer towards the annuity from retirement accounts held by Edquist in the amount of $72,151.  Doc. No. 50-5 at 2; Doc. No. 50-1 at 40-41.

5. Jackson's records show that it mailed a copy of the annuity contract to Edquist on June 25, 2013 with a cover letter addressed to her at 87 Florence Street, Melrose, MA 02176-4432.  Doc. No. 50-7 at 2; Doc. No. 50-9 at 2-3.

6. Jackson's records also show that it sent the mailing by United Parcel Service ("UPS").  Doc. No. 50-7 at 2; Doc. No. 50-8 at 2; Doc. No. 50-10 at 2-4, 6.

7. UPS records show that UPS picked up the mailing from Jackson's office in Lansing, Michigan and delivered it to 87 Florence Street in Melrose on June 27, 2013 by leaving the mailing at the "Front Door."  Doc. No. 50-10 at 2-4, 6.

8. After the first payment of $72,151 on June 24, 2013, Edquist made an additional payment of $16,891.05 towards the annuity from her retirement accounts on or about July 22, 2013.  Doc. No. 50-3 at 2; Doc. No. 50-6 at 2; Doc. No. 50-1 at 45-46.

9. Edquist received notice, by mail, at the 87 Florence Street, Melrose, MA 02176 address of these two payments from Jackson at least in the form of a transaction confirmation dated June 24, 2013 (showing the first payment) and a fourth quarter 2013 statement (reflecting both payments).  Doc. No. 50-5 at 2; Doc. No. 50-6 at 2-3; Doc. No. 50-1 at 39-40, 47-48.

10. Edquist called Jackson on July 2, 2014.  During the call, which was recorded, the Jackson Customer Service Representative stated that Jackson had mailed the contract to Edquist for her receipt the next day.  Immediately thereafter, Edquist stated "I need to have it in my files because we moved, and I know it's somewhere in the boxes, and so I just wanted to have at least something in my file."  Doc. No. 50-1 at 65.

11. Edquist received the July, 2014 mailing of the contract.  Doc. No. 50-1 at 119; Doc. No. 50-13 at 2.

12. After receipt of the contract in July, 2014, Edquist sent a letter, dated July 7, 2014, that requested rescission of the contract pursuant to the contract's "right to examine" provision and sought return of the money she had transferred to Jackson.  Doc. No. 50-13 at 2.

13. Jackson responded to Edquist's letter on July 17, 2014 and declined to rescind the contract under the "right to examine" provision.  Doc. No. 50-15 at 2.

Both Edquist's and Jackson's motions for summary judgment turn on a dispute over when Edquist received a copy of the annuity contract she purchased in 2013 and attempted to rescind in 2014.  The contract provides that the purchaser of the annuity "may return this contract to the selling producer or the Company within 10 days (20 days if it was purchased as a replacement contract) after you receive it.  The Company will refund the premium paid less any

withdrawals." Doc. No. 50-14 at 2.  Thus, if Edquist received the contract in 2013, her attempt to rescind the contract was untimely; if she received the contract on July 2, 2014, then, per the contract, the attempted rescission fell within the "right to examine" provision of the contract, or at least arguably so.

Looking first to Edquist's Motion for Summary Judgment, the Motion fails for want of evidentiary support.  In light of the facts set forth above and drawing all reasonable inferences in favor of Jackson, as the relevant standard requires, a jury could reasonably infer that Edquist received the contract in 2013, notwithstanding her testimony to the contrary.  The undisputed evidence establishes that (a) Jackson mailed Edquist a copy of the contract in 2013 via UPS, Doc. No. 50-7 at 2; and (b) the package containing the copy of the contract was delivered to Edquist's correct home address, Doc. Nos. 50-8, 50-9.  For this reason, Edquist has not established that she is entitled to rescission as a matter of law, and her Motion for Summary Judgment, Doc. No. 39, is DENIED.

Turning now to Jackson's Motion for Summary Judgment, Jackson argues that the "mailbox rule" applies and Edquist should be presumed to have received the contract on June 25, 2013.[2]  The "'mailbox rule' is a 'settled feature of the federal common law' and 'provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.'"  Hoefs v. CACV of Colorado, LLC, 365 F. Supp. 2d 69, 72-73 (D. Mass. 2005) (adopting Report and Recommendation of Neiman, M.J.);

---

[2] The Court notes that Jackson, by and large, cites federal law as the basis for its argument that the "mailbox rule" and presumption of receipt apply.  In opposing Jackson's Motion, Edquist seeks to distinguish the cases cited by Jackson, but does not argue that state law, rather than federal law, applies to this question.  Doc. No. 62 at 28.  While the Court notes that Federal Rule of Evidence 302 provides "[i]n a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision," Fed. R. Evid. 302, by not raising the issue, the parties have waived any argument that Massachusetts law governs any presumption of receipt in this case.  The Court proceeds to decide the issue according to law invoked by the parties, federal law.

see also Hagner v. United States, 285 U.S. 427, 430 (1932).  This presumption is "very strong" and "can only be rebutted by specific facts." Hoefs, 365 F. Supp. 2d at 73 (quoting Arkansas Motor Coaches, Ltd., Inc. v. Comm'r, 198 F.2d 189, 191 (8th Cir. 1952)).  The rule encompasses more than mailings made with the United States Postal Service; the "presumption can arise where the sender uses a private delivery service." Murray v. TXU Corp., 279 F. Supp. 2d 799, 802 (N.D. Tex. 2003) (citing United States v. Wilson, 322 F.3d 353, 362 (5th Cir. 2003)); see also Bronia, Inc. v. Ho, 873 F. Supp. 854, 857-59 (S.D.N.Y. 1995) (applying the same rule to mailing with Federal Express); 2 Michael H. Graham, Handbook of Federal Evidence § 301:14 (7th ed. 2014) (noting cases that have applied the presumption to Federal Express and UPS delivery services).

    The presumption of receipt plainly applies here.  Jackson has produced undisputed evidence that it mailed the contract to Edquist at a proper address on June 25, 2013.[3]  Further, the UPS tracking information and delivery confirmation provide evidence that the contract actually left Jackson's headquarters with sufficient postage for delivery.  These facts, standing alone, warrant the application of the mailbox rule with its presumption of receipt.  Jackson, however, points to additional evidence suggesting receipt, specifically:  (1) evidence that UPS actually delivered the mailing to Edquist's home, (2) Edquist's admission in 2014 of prior receipt, and (3) evidence of Edquist's behavior in conformity with receipt in 2013, namely that she made

---

[3] Edquist complains that Jackson did not send the UPS mailing in 2013 to a proper address, because it was addressed to 87 Florence Street rather than 87 Florence Street, Apartment 2.  On this record, this is a red herring.  It appears that Edquist herself provided the address of "87 Florence Street, Melrose, MA." Doc. No. 50-4 (Annuity Application).  In addition, Edquist admitted to receiving other mailings not bearing the additional "Apartment 2" designation.  Doc. No. 50-1 at 43, 47; Doc. No. 50-5 (transaction confirmation); Doc. No. 50-6 (quarterly statement).  Edquist has provided no evidence whatsoever that she regularly uses the "Apartment 2" designation, that it is an official address, or that mailings omitting that additional designation fail to arrive.  Moreover, in this case, the undisputed evidence establishes that UPS left the mailing at the front door of the home, thus the omission of "Apartment 2" had no bearing on the routing of the package to the-two family home in which she lived.

substantial payments to Jackson on the annuity in 2013 and received confirmation of those payments in 2013. The 2014 admission of receipt comes from Edquist's statement to Jackson's representative on the telephone in which she admitted to prior possession of the contract—a statement referred to in her 2015 deposition testimony in which she confirmed that her statement meant that the annuity contract with Jackson was "somewhere in the boxes" in her apartment. Doc. No. 50-1 at 68. This evidence is more than sufficient to establish receipt.[4]

In an attempt to rebut the presumption and the evidence of actual receipt, Edquist makes a blanket denial of receipt of the contract in 2013 and explains her oral admission of receipt, and her apparent confirmation of the admission during her deposition, as an inartful choice of words, contending she meant she had received some account-related documents, but not the annuity contract itself. Doc. No. 50-1 at 117-19. This evidence does not create a triable issue of fact regarding whether she received the annuity contract in June, 2013. As an initial matter, mere denial of receipt is insufficient to rebut the presumption. See United States Fire Ins. Co. v. Producciones Padosa, Inc., 835 F.2d 950, 952 n.2 (1st Cir. 1987) (quoting Meckel v. Continental Res. Co., 758 F.2d 811, 817 (2d Cir. 1985)); see also Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 92 (2d Cir. 2010). Further, as set out above, Edquist's admission of receipt is not necessary to invoke the presumption, and thus, even if the Court were to remove

---

[4] Jackson additionally offers evidence of a delivery from Amazon.com to 87 Florence Street at the same time as records show the contract to have been delivered. In response, Edquist points to evidence that she was not the intended recipient of the Amazon.com shipment, and suggests that Edquist's tenant, living in the other residence of the two-family house at 87 Florence Street, may have been the intended resident. These facts do not disturb the presumption of receipt. The evidence is that both packages were left at the front door of 87 Florence Street. There is no evidence to support the contention that the tenant living in the other apartment at that address received, intercepted, or interfered with the delivery of the contract that was delivered at the same time. Edquist's contention that the tenant may have received the mailing containing the contract amounts to little more than an unsupported elaboration on her assertion that she did not receive the mailing and is not sufficient to rebut the presumption of receipt.

that fact from consideration, the presumption would apply.  Finally, Jackson points to more than a presumption of receipt; it has produced evidence of actual delivery and receipt by Edquist.

The proof of receipt in 2013 makes Edquist's attempted rescission in 2014 untimely under the terms of the contract, dooming her breach of contract claim.  The resolution of this issue is also fatal to Edquist's claims for breach of the implied warranty of good faith and fair dealing and for violation of Mass. Gen. Laws chapter 93A as the only allegations in the Complaint relate to the failure to rescind the contract, making those claims derivative of the breach of contract claim.[5]  See generally Doc. No. 1-1.  Accordingly, Jackson's Motion for Summary Judgment, Doc. No. 47, is ALLOWED.

Looking to the remaining motions, Jackson has moved for partial summary judgment seeking to disqualify Edquist from serving as representative of the putative class in this action.  In light of the resolution of Jackson's other motion for summary judgment, the Motion for Partial Summary Judgment, Doc. No. 43, is DENIED AS MOOT.

Edquist's Motion to Compel, Doc. No. 25, Second Motion to Compel, Doc. No. 36, Motion to Strike Late Discovery, Doc. No. 37, and Motion to Strike, Doc. No. 59, are DENIED.  The requests for oral argument on those Motions are DENIED as well.

Edquist has also moved to strike an affidavit provided by a UPS employee in response to Jackson's subpoena and for sanctions for failure to abide by discovery deadlines set by the Court and for filing false affidavits.  That Motion, Doc. No. 65, is DENIED.  The evidence that an

---

[5] Insofar as Edquist may argue that some of her claims survive due to her allegation in her motion papers that Jackson has refused her attempts to withdraw the funds she transferred, less a surrender fee provided by the contract, such claims still fail.  Those claims fail in general because they were not pled in the Complaint, Doc. No. 1-1, and specifically as to Chapter 93A because such claims were not included in the required demand letter.  Doc. No. 41-5; see Clegg v. Butler, 676 N.E.2d 1134, 1141 (Mass. 1997) ("Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief.").

unrelated package addressed to the same address was not attributable to Edquist's Amazon.com account does not support the contention that Jackson, Jackson's counsel, or a UPS employee made a false statement to the Court, either deliberately or recklessly. In addition, while the Court takes noncompliance with its scheduling orders seriously, the production of documents returned pursuant to a third-party subpoena approximately three weeks after the deadline is not the sort of conduct that warrants sanctions. Insofar as the Motion seeks to strike the discovery, the Court notes that it perceives no prejudice to Edquist from receiving the third-party discovery three weeks after the deadline. Significantly, Edquist has not sought any extension of time to respond to that discovery nor any opportunity to take further discovery in light of the documents produced.

Finally, Jackson has moved to disqualify Edquist's counsel from representing her individually and from representing the putative class in this action. The undisputed evidence establishes that Edquist's counsel and Edquist have been engaged in a long-term relationship since 2003 and that Edquist describes her counsel as her fiancé during this period. Doc. No. 29-4 at 100-104. The Court notes that the relevant rule, Mass. R. Prof. C. 3.7, generally precludes an attorney from serving as both a fact witness on contested matters and as counsel <u>at trial</u>. Here, Jackson presents a serious issue regarding the personal knowledge of Edquist's counsel related to a critical issue in the case—when she first received the annuity contract.[6] The Court, however, declines to address this issue definitively at this juncture of the case, as the facts bearing on the propriety of Edquist's representation by present counsel are not fully developed so long before trial. Accordingly, insofar as it seeks to disqualify Edquist's counsel from <u>presently</u> representing

---

[6] The Court does not understand attorney-client privilege to prevent the disclosure of counsel's knowledge of the relevant facts as there has been no representation that counsel obtained that knowledge from attorney-client communications.

her on her individual claims in this action, the Motion, Doc. No. 27, is DENIED WITHOUT PREJUDICE to renewal before trial.

Insofar as the Motion seeks to disqualify Edquist's counsel from representing the putative class in this action, the Motion is DENIED AS MOOT in light of the Court's rulings on the other pending motions. The Court notes, however, that Edquist's counsel appears to acknowledge the issue raised by the Motion, as he alternatively requests that the Court allow Edquist time to retain independent co-counsel to protect the interests of the class. Doc. No. 38 at 1-2. Because Edquist's claims fail on the merits, there is no need to find substitute counsel for the proposed class.

SO ORDERED.

  /s/ Leo T. Sorokin\
Leo T. Sorokin\
United States District Judge